Amir A. ISBELL, Bergina Brickhouse
Isbell, M.D., J.B., and A.I.,
Plaintiffs,

v.

Paul J. BELLINO, M.D., Thomas W.
Wilson, M.D., Geisinger Medical Cen-
ter, Craig Patterson, Rachel Wade,
Julie Spencer, and Montour County,
Defendants.

No. 4:12–CV–0043.

United States District Court,
M.D. Pennsylvania.

Sept. 25, 2012.

494

Mark D. Freeman, Mark D. Freeman, Esq., Media, PA, for Plaintiffs.

David L. Schwalm, Thomas, Thomas & Hafer, LLP, Harrisburg, PA, for Defendants.

---

## MEMORANDUM & ORDER

JOHN E. JONES III, District Judge.

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

This matter is before the Court on the Report and Recommendation ("R & R") of Magistrate Judge J. Andrew Smyser (doc. 30), filed July 6, 2012, recommending that we grant the Motion to Dismiss (doc. 17) of Defendants Paul J. Bellino, Thomas W. Wilson, and Geisinger Medical Center, and grant in part and deny in part the Motion to Dismiss (doc. 16) of Defendants Craig Patterson, Rachel Wade, Julie Spencer, and Montour County. Plaintiffs filed objections to the R & R and a supporting brief (docs. 33, 33–1), and the Defendants have each filed opposition briefs (docs. 38, 39). For the reasons that follow, we shall adopt Magistrate Judge Smyser's recommended disposition in its entirety.

## I.  STANDARDS OF REVIEW

### A.  Review of Magistrate Judge's Report and Recommendation

When objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made. 28 U.S.C. § 636(b)(1); *United States v. Raddatz,* 447 U.S. 667, 674–75, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. *Id.* Although the standard of review is *de novo,* 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. *Raddatz,* 447 U.S. at 674–75, 100 S.Ct. 2406; *see also Mathews v. Weber,* 423 U.S. 261, 275, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976); *Goney v. Clark,* 749 F.2d 5, 7 (3d Cir.1984).

### B.  Summary Judgment

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325, 106 S.Ct. 2548. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed.R.Civ.P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a

reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.,* 214 F.3d 402, 407 (3d Cir.2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey,* 772 F.2d 1103, 1109–10 (3d Cir.1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *P.N. v. Clementon Bd. of Educ.,* 442 F.3d 848, 852 (3d Cir.2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir.1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude

summary judgment." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Plaintiffs are Amir A. Isbell ("Mr. Isbell"), Bergina Brickhouse Isbell ("Mrs. Isbell"), husband and wife, and their two minor children, J.B. and A.I. Defendants are Paul J. Bellino and Thomas W. Wilson (collectively, "Medical Defendants")[1] and Craig Patterson, Rachel Wade, Julie Spencer, and Montour County (collectively, "County Defendants"). The Plaintiffs' complaints arise from the Medical Defendants' misdiagnosis of A.I.'s injuries and the child abuse investigation, safety plan, and criminal charges against Mr. Isbell which followed.

When A.I. was four (4) months old and J.B. was seven (7) years old, Mr. Isbell was looking after both children while Mrs. Isbell was at work, as was their usual practice. When Mrs. Isbell returned home, she noticed that A.I. could not keep down the Tylenol and Pedialyte that she attempted to feed to him. Concerned about the potential for dehydration, she brought A.I. to Geisinger Medical Center for examination. The examination revealed that A.I. was suffering from subdural hematomas, retinal hemorrhaging, retinoschisis, and rib fractures. A.I. required immediate surgery to drain the fluid and pressure in his brain that had resulted from these substantial injuries. Both Defendants Bellino and Wilson conducted examinations of A.I. and reported that the finding of retinal hemorrhages

---

**1.** Geisinger Medical Center was initially named as a Defendant in Count VII of the Plaintiffs' Complaint. (Doc. 1). However, on April 24, 2012, in opposing the Medical Defendants' Motion to Dismiss, Plaintiffs indicated to the Court that Count VII is withdrawn as to all Defendants without prejudice. (*See* Doc. 25, p. 13). Accordingly, because Geisinger Medical Center was named only in Count VII, it is no longer a defendant in this action and our Order will thus direct the clerk to terminate it as a party to this action.

and retinoschisis had unequivocally been caused by "non-accidental trauma." (Doc. 1, ¶¶ 1–32). Defendant Bellino reported the abuse finding to the Pennsylvania State Police, who contacted the County Defendants. Mr. Isbell was criminally charged with aggravated assault, simple assault, and endangering the welfare of a child.

Thereafter, the County Defendants presented the Plaintiffs with a voluntary safety plan, which would bar Mr. Isbell from any unsupervised contact with either of his two children. The County Defendants threatened the Plaintiffs with an ultimatum: agree to the terms of the plan or face losing custody of their children. Plaintiffs, under protest, agreed to the safety plan, fearful that if they did not, the County Defendants would remove their children from their custody. Pursuant to the safety plan, Mr. Isbell left the family home and did not return for 481 days, until the safety plan was lifted. Criminal charges remain pending against Mr. Isbell as a result of the child abuse report.

## B. Procedural History

The Plaintiffs commenced this action on January 6, 2012, with the filing of an eight-count Complaint (doc. 1) against the several Defendants. As it relates to the Medical Defendants, Plaintiffs' Complaint asserts the following causes of action: in Count I, a substantive due process claim against Defendant Bellino for failing to exhaust all possibilities before rendering a Shaken Baby Syndrome diagnosis; in Count II, a substantive due process claim against Defendant Bellino for adopting an improper burden shifting presumption that presumes that subdural hemorrhaging is

caused by abuse; and in Count VIII, a state law claim for intentional infliction of emotional distress against the Medical Defendants.[2]

With respect to the County Defendants, the Plaintiffs' Complaint asserts the following claims: in Count III, a substantive due process claim against Defendant Montour County for adopting a policy of appointing Defendant Bellino to the investigation team and relying exclusively upon his diagnosis; in Count IV, a substantive due process claim against all County Defendants for failing to independently investigate the diagnosis and circumstances prior to implementing a safety plan; in Count V, a *Monell* procedural and substantive due process claim against Defendant Montour County for failing to train employees regarding safety plans; and in Count VI, a procedural due process claim against Defendants Wade, Spencer, and Patterson for failure to provide proper procedural safeguards when implementing the safety plan.

On January 11, 2012, the case was verbally referred to Magistrate Judge Smyser. On April 2, 2012, the County Defendants and the Medical Defendants both filed Motions to Dismiss (docs. 16, 17), followed by timely supporting briefs (docs. 19, 20). The Plaintiffs filed a brief in opposition to the County Defendants' Motion on April 24, 2012 (doc. 24) and to the Medical Defendants' Motion on April 29, 2012. (Doc. 25). On May 11 and May 23, 2012, respectively, the County Defendants and the Medical Defendants filed reply briefs (docs. 26, 29). Shortly thereafter, on July 6, 2012, Judge Smyser issued the instant R & R, recommending we grant in part and deny in part the County Defen-

---

2. As noted *supra,* the Complaint initially included an evidentiary claim sounding in procedural and substantive due process against all Medical Defendants. This claim was with-

drawn by the Plaintiffs in their brief opposing the Medical Defendants' Motion. (Doc. 25, p. 13).

dants' Motion and grant in full the Medical Defendants' Motion. (*See* Doc. 30).

### C. Report and Recommendation

Magistrate Judge Smyser first considered Defendant Bellino's argument that he is not subject to Section 1983 liability because he is not a state actor. After examining Defendant Bellino's intimate involvement with the County's child abuse investigative team, Judge Smyser concluded that, in that role, Defendant Bellino could be considered a state actor subject to Section 1983 liability. Next, Judge Smyser quickly dismissed the Defendants' claims of absolute immunity, noting that the allegedly unconstitutional conduct here occurred during the investigative phase and that absolute immunity only applies to actions taken in petitioning the courts. Neither party objects to these recommendations.

With regard to the substantive claims, Judge Smyser first recommends that we dismiss all substantive due process claims against all Defendants. Specifically, Judge Smyser concludes that all Defendants are entitled to qualified immunity because their conduct does not rise beyond mere negligence and does not reach the level of "conscience-shocking" behavior requisite of a substantive due process claim. Judge Smyser likewise recommends that we dismiss the intentional infliction of emotional distress claim against the Medical Defendants, concluding that their behavior under the circumstances was neither extreme nor outrageous. Judge Smyser recommends that the Court deny the County Defendants' Motion, however, to the extent that it seeks dismissal of Plaintiffs' procedural due process claims, concluding that the facts alleged, presumed true at this stage, make out a procedural due process claim against the County Defendants based upon the deci-

sions of *Croft v. Westmoreland County Children and Youth Services,* 103 F.3d 1123 (3d Cir. Jan.1997), *Starkey v. York County,* No. 1:11–cv–00981, Doc. 28, 2011 WL 11071762 (M.D.Pa. Sept. 21, 2011) (Jones, J.), and *Billups v. Penn State Milton S. Hershey Med. Ctr.,* 2012 WL 1392294, 2012 U.S. Dist. LEXIS 56414 (M.D.Pa. Apr. 12, 2012) (Kane, C.J.).

### D. Plaintiffs' Objections

The Plaintiffs submitted objections to the R & R, contending that Magistrate Judge Smyser erroneously concluded that the Defendants' conduct fails the substantive due process test and that he misapplied the culpability standard with respect to each group of Defendants. In their brief in support of their objections, the Plaintiffs largely reiterate the arguments made in opposition to the Defendants' Motions to Dismiss, contending that the Defendants' actions, individually and collectively, "shock the conscience" and warrant Section 1983 liability. Each group of Defendants responds similarly to the Plaintiffs' objections, asserting that the Magistrate Judge appropriately applied the qualified immunity analysis and determined that their conduct does not rise to a substantive due process violation.

### III. DISCUSSION

As noted above, the Plaintiffs' Complaint asserts an array of substantive and procedural due process claims against the various Defendants, both collectively and individually. As recommended by the Third Circuit, we will proceed by considering the threshold issues of qualified and absolute immunity before analyzing the substantive merit of the Plaintiffs' stated claims. *See Wilson v. Zielke,* 382 Fed.Appx. 151, 152 (3d Cir.2010) (quoting *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

## A. Absolute Immunity

■ As an initial matter, we note that we agree with, and neither group of Defendants objects to, Magistrate Judge Smyser's conclusion that the Defendants are not entitled to the absolute immunity granted to social workers in petitioning the courts in child protection cases. *See Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 493 (3d Cir.1997). The facts alleged in the Plaintiffs' Complaint make clear that the allegedly unconstitutional conduct occurred prior to the County Defendants initiating child abuse petitions and prosecutions against Mr. Isbell. Accordingly, we will adopt Judge Smyser's sound conclusion that the Defendants are not entitled to absolute immunity.

## B. Due Process Claims and Qualified Immunity

The qualified immunity inquiry requires further discussion. Although the scope of Plaintiffs' objections is less than pellucid, it appears that they object to Magistrate Judge Smyser's qualified immunity determination. To that end, the Third Circuit has succinctly set forth the standard for analyzing a qualified immunity claim:

> Determining whether a state actor is entitled to the affirmative defense of qualified immunity generally involves two inquiries: (1) do the facts alleged show that a state actor violated a constitutional right, and (2) was the constitutional right clearly established so that a reasonable person would know that the conduct was unlawful? A right is clearly established if there is "sufficient precedent at the time of the action ... to put [the] defendant on notice that his or her conduct is constitutionally prohibited. Courts are accorded 'discretion in deciding which of the two prongs of the qualified immunity analysis should be ad-

dress first in light of the circumstances in the particular case at hand.'"

*Wilson*, 382 Fed.Appx. at 152 (quoting *Pearson*, 555 U.S. 223, 129 S.Ct. 808; *McKee v. Hart*, 436 F.3d 165, 171 (3d Cir.2006)) (internal citations omitted). Consistent with *Wilson* and *Pearson*, Judge Smyser first considered whether the Plaintiffs have sufficiently stated a constitutional claim. We will first consider whether the Plaintiffs' Complaint states a substantive due process claim.

### 1. Substantive Due Process Claims

■ As noted above, Magistrate Judge Smyser concluded that the Plaintiffs have failed to allege facts supporting the requisite level of culpability on the part of each group of Defendants to state a substantive due process claim. The Plaintiffs assert that Judge Smyser erroneously applied the "shocks the conscience" standard in his R & R and that he should have considered "deliberate indifference" instead. We agree with Judge Smyser and the Defendants that the "shocks the conscience" standard is applicable here, and we conclude that Judge Smyser properly applied this standard in finding that the Plaintiffs have failed to state a substantive due process claim.

The Third Circuit has balanced the familial interest in the care and custody of one's children and the social worker's critical role in protecting those children, holding that "in order for liability to attach, a social worker need not have acted with the 'purpose to cause harm,' *but the standard of culpability ... must exceed both negligence and deliberate indifference,* and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Miller v. City of Phila.*, 174 F.3d 368, 375–76 (3d Cir.1999) (emphasis added). Thus, mere negligence or deliberate indifference on the part of the Defen-

dants is insufficient to support a substantive due process claim. *Id.* at 375. The Plaintiffs must thus prove that the Defendants' conduct was not only unreasonable, but rises to such an egregious level as to "shock the conscience." *Id.*

■ Applying this standard to the facts alleged in the Complaint, Magistrate Judge Smyser concluded that the Defendants did not engage in conscience-shocking behavior. First, with respect to the Medical Defendants, the Plaintiffs must plead facts demonstrating that Defendants Bellino and Wilson lacked *any* reasonable basis upon which to conclude the infant Plaintiff had been abused. *See Billups,* 2012 WL 1392294 at *10, 2012 U.S. Dist. LEXIS at *32 (concluding that no substantive due process claim lies where physician possessed "at least 'some reasonable and articulable evidence giving rise to a reasonable suspicion that [a child] had been abused'" (quoting *Croft,* 103 F.3d at 1125)).

We note, as did Judge Smyser, that Mrs. Isbell presented to the emergency room with an infant suffering from subdural hematomas, retinal hemorrhaging, retinoschisis, and rib fractures, and that the infant required surgery to drain fluid and pressure in his brain resulting from these conditions and injuries. After several examinations of the infant child, the Medical Defendants concluded, based on their medical training and allegedly upon materials promulgated by the American Academy of Pediatrics, that the infant had suffered from child abuse. While the injuries were later revealed to have been caused by a Vitamin D deficiency and congenital rickets, under the circumstances, we cannot conclude that the Medical Defendants' behavior shocks the conscience where they possessed a reasonable and articulable basis for their child abuse diagnosis. *See, e.g., id.* at *10–11, 2012 U.S. Dist. LEXIS at *31–33 (where medical exam revealed a "childhood stroke, . . . a clotted vein, and . . . sixteen rib fractures," physician had "reasonable and articulable evidence giving rise to a reasonable suspicion" of abuse and was entitled to qualified immunity).

■ Nor can we conclude that the County Defendants acted in a manner that violates the Plaintiffs' substantive due process rights. The Third Circuit has held that "a plaintiff must establish that a child welfare worker, in removing a child from parental custody, possessed *no* objectively reasonable basis for believing that parental custody threatened the child's welfare or safety." *Miller,* 174 F.3d at 368 (citing *Croft,* 103 F.3d at 1127) (emphasis added). The County Defendants, possessed with medical evidence and a diagnosis of child abuse obtained from Defendants Bellino and Wilson, concluded that A.F.'s welfare was in jeopardy and acted immediately to protect the child's safety. On the facts of the Plaintiffs' Complaint, then, the County Defendants possessed a reasonable basis for believing that A.I.'s safety was threatened by his parents' continued custody.

Plaintiffs cite to *Croft* in support of their contention that the County Defendants are not entitled to qualified immunity. The circumstances *sub judice* stand in stark contrast to *Croft,* where a social worker was found to have acted without an reasonable belief of abuse when she acted upon a single sixth-level hearsay accusation and without seeking medical or any other evidence.[3] We thus agree with Magistrate

---

**3.** In addition to their argument that the County Defendants were acting with deliberate indifference to the Plaintiffs' rights in relying on a medical diagnoses of child abuse, the Plaintiffs also assert that the County Defendants are responsible and subject to Section 1983 liability for the investigative methodology of the Geisinger Defendants, specifically taking

Judge Smyser that the Plaintiffs have failed to articulate a substantive due process claim against the County Defendants. As with the Medical Defendants, the same conscience-shocking standard applies, *see Miller*, 174 F.3d at 375–76, and we cannot conclude that the County Defendants' actions rise to a conscience-shocking level where they were supported by a medical diagnosis of child abuse.

Accordingly, because the Plaintiffs have failed to state conduct by the Defendants rising to a conscience-shocking level, we conclude that the Defendants are entitled to qualified immunity on all substantive due process claims raised in the Plaintiffs' Complaint. We will thus dismiss the Plaintiffs' Complaint to the extent it states substantive due process claims in Counts I, II, III, IV, V, and VII.

**2. Procedural Due Process Claims**

■■ Judge Smyser reached a different conclusion with respect to the Plaintiffs' procedural due process claims against the Defendants, and we again agree in full with his analysis. As this and other courts have previously held, the imposition of a voluntary safety plan may, under some circumstances, deprive a parent of their constitutional right to familial association. In *Croft*, the Third Circuit explained in a footnote that "the policy of removing the suspected parent from the family home during the pendency of child abuse investigations absent any procedural safeguards raises a procedural due process issue." *Croft*, 103 F.3d at 1125 n. 3. Expanding upon the Circuit's observation,

district courts have twice concluded that implementation of a voluntary safety plan without any procedural safeguards or legal authority can amount to a due process violation. *See Starkey*, No. 1:11–cv00981, Doc. 28, at pp. 17–20 (finding that a safety plan agreed to under ultimatum that state will take custody of children is not voluntary and that imposing such a plan without procedural safeguards rises to a constitutional violation); *Billups*, 2012 WL 1392294, at *17–21, 2012 U.S. Dist. LEXIS 56414, at *53–65 (noting that due process rights may be violated where social worker deliberately "coerced [parents] into signing [a safety plan] without proper legal grounds").

■ Here, the Plaintiffs were presented with an ultimatum: separate yourself from your children, or the county will do it for you. The Plaintiffs were coerced into signing the safety plan under threat of losing their children to foster care, and as a result, Mr. Isbell was separated from his wife, children, and home for 481 days. No procedural safeguards were in place to control either the implementation or the renewal and duration of the safety plan. As this Court observed in *Starkey*, while the voluntary safety plan is a product of the county agency and the requisite procedural safeguards may differ from those required for the "safety agreements" provided for by Pennsylvania statutes, *see* 55 Pa.Code § 3130.65(a), safety plans nonetheless operate to deprive parents of their right to familial association with their children and are thus entitled to some degree

___

issue with their application of the presumption of abuse promulgated by the American Academy of Pediatrics for use in circumstances where a child presents with the type of injury that the Plaintiff A.I. suffered. We defer to Magistrate Judge Smyser's thorough discussion of this argument at pages 511 through 512 of his R & R and note only briefly that based upon the facts of the Plain-

tiffs' Complaint, we cannot conclude that either group of Defendants violated the Plaintiffs' substantive due process rights by relying on, or permitting others to rely on, this methodology absent some allegation that the methodology was faulty or likely to result in deprivation of constitutional rights. The record before us presents no basis for this conclusion.

of due process protection. Pursuant to *Croft, Billups,* and *Starkey,* we must deny the County Defendants' Motion to Dismiss Plaintiffs' procedural due process claims. Plaintiffs have pled sufficient facts which, if true, establish that they were deprived of their right to care, custody and management of their children without due process of law.

### C. *Monell* Claims

█ We also agree with Magistrate Judge Smyser's conclusion that the County Defendants' Motion should be granted in part and denied in part with respect to the various *Monell* claims. The Plaintiffs assert a *Monell* procedural due process claim against the County for failure to properly train employees regarding safety plans and for adopting a policy of providing no procedural safeguards for such plans. They also assert a *Monell* substantive due process claim against the County, contending that the County's policy of relying upon Defendant Bellino and other physicians associated with the American Academy of Pediatrics in investigating child abuse cases violences the Plaintiffs' substantive due process rights.

██ In *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a "municipality is only liable when the plaintiff can show that the municipality itself, by implementing a municipal policy, regulation or decision either formally adopted or informally adopted through custom, actually caused the alleged constitutional transgression." *Id.* at 691, 98 S.Ct. 2018. A "policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict, [and a] custom is an act that has not been formally approved by an appropriate decisionmak-

er, but that is so widespread as to have the force of law." *Natale v. Camden County Corr. Facility,* 318 F.3d 575, 583–84 (3d Cir.2003). While the Complaint fails to establish a substantive due process claim for the County's reliance upon Defendant Bellino and other physicians in abuse investigations, the Plaintiffs have successfully pled that the County has a policy of implementing safety plans without procedural safeguards, in violation of due process standards.

██ As we have hereinabove held, the Plaintiffs have failed to establish that Defendant Bellino's actions in employing presumptions promulgated by the American Academy of Pediatrics rises to a conscience-shocking level that does violence to the Plaintiffs' substantive due process rights. Accordingly, to the extent that the Defendant County may have an established policy of relying upon Defendant Bellino or other physicians associated with the American Association of Pediatrics in its investigations, the Complaint nonetheless fails to demonstrate a constitutional violation birthed of this particular policy. Accordingly, Count III fails to state a substantive due process claim and must be dismissed.

The Plaintiffs have succeeded, however, in stating *Monell* procedural due process claims in Counts V and VI. The Defendant County does not deny that it has a policy of implementing voluntary safety plans without any procedural safeguards. Indeed, the Defendant County maintains that it need not provide procedural precautions when implementing a safety plan. We thus agree with Magistrate Judge Smyser that the Complaint sufficiently establishes that the County Defendants have a policy of failing to provide procedural protections in conjunction with safety plans. Accordingly, we conclude that the Plaintiffs have sufficiently pled a procedur-

al due process violation against the Defendant County pursuant to *Monell* and its progeny and we will deny the County Defendants' Motion to the extent it seeks dismissal of the Plaintiffs' *Monell* claim in Count V. Further, because the Defendant County maintains that no procedural safeguards are required in implementing a voluntary safety plan, it is reasonable to infer, on these facts, that the County has failed to train its employees regarding such safeguards. Accordingly, we will deny the County Defendants' Motion with respect to the Plaintiffs' *Monell* failure-to-train claim in Count VI.

### D. Intentional Infliction of Emotional Distress

The Plaintiffs also assert a state law claim for intentional infliction of emotional distress against Defendants Bellino and Wilson. Under Pennsylvania law, a person may be subject to liability for intentional infliction of emotional distress for (1) extreme and outrageous conduct (2) which intentionally or recklessly causes (3) severe emotional distress in another. *See Taylor v. Albert Einstein Med. Ctr.*, 562 Pa. 176, 754 A.2d 650, 652 (2000); *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw.Ct.2010). The conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society." *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 202 (Pa.Super.Ct.2008). The Plaintiffs' Complaint establishes only that Defendants Bellino and Wilson engaged in independent medical examinations of A.I. and concluded thereafter, based upon methodology promulgated by the American Academy of Pediatricians, that A.I. had been abused. We agree with Magistrate Judge Smyser's conclusion that nothing about these facts is extreme or outrageous and will thus dis-

miss the Plaintiffs' intentional infliction of emotional distress claim.

## IV. CONCLUSION

Based on all of the foregoing, we shall adopt Magistrate Judge Smyser's Report and Recommendation (doc. 30) in its entirety and grant in part and deny in part the Defendants' Motions to Dismiss. (Docs. 16, 17).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Report and Recommendation ("R & R") of Magistrate Judge Smyser (doc. 30) is **ADOPTED** in its entirety.

2. The Medical Defendants' Motion to Dismiss is **GRANTED** in its entirety and Counts I, II, VII, and VIII of the Plaintiffs' Complaint are **DISMISSED** as to the Medical Defendants. The Clerk of Court is **DIRECTED** to terminate Defendants Bellino, Wilson, and Geisinger Medical Center from this action.

3. The County Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part to the following extent:

   a. The Motion is **GRANTED** to the extent it seeks dismissal of the Plaintiffs' substantive due process claims. The substantive due process claims in Counts III, IV, and V are **DISMISSED** as to the County Defendants.

   b. The Motion is further **GRANTED** to the extent it seeks dismissal of the Plaintiffs' intentional infliction of emotional distress claim. Count VIII is **DISMISSED** with prejudice.

   c. The Motion is **DENIED** with respect to the procedural due process claims, including the *Monell* claims,

against the County Defendants in Counts V and VI.

## REPORT AND RECOMMENDATION

J. ANDREW SMYSER, United States Magistrate Judge.

### I. *Procedural History.*

The complaint was filed on January 6, 2012. The plaintiffs are Amir A. Isbell and Bergina Brickhouse Isbell, M.D., a husband and wife, and their two minor children, J.B. and A.I. The defendants are Paul J. Bellino, M.D., Thomas W. Wilson, M.D., Geisinger Medical Center, Montour County, Craig Patterson, Julie Spencer, and Rachel Wade.

Defendants Bellino and Wilson are affiliated with defendant Geisinger Medical Center. Defendants Patterson, Spencer, and Wade are employees of defendant Montour County. The claims are claims of violations of federally protected substantive and procedural due process rights. The causes of action are brought under 42 U.S.C. §§ 1983 and 1985. There is also a state law tort (intentional infliction of emotional distress) claim. The court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 and pendant jurisdiction.

### II. *The Complaint.*

The complaint arises from the defendants' determination that there was cause to believe that plaintiff Amir Isbell had physically abused his infant son A.I. and had caused shaken baby syndrome. This determination was initially made by defendant Dr. Bellino, who examined A.I. when plaintiff Bergina Isbell, A.I.'s mother, brought A.I. to the Geisinger Medical Center. Defendant Bellino reported his diagnosis to the Pennsylvania State Police and

to Montour County officials. Amir Isbell was criminally charged.

Montour County officials presented to the Isbells a choice of accepting a "voluntary safety plan" in which Amir would have no unsupervised contact with A.I., his son; or another alternative, that Montour County would remove A.I. from his parents' custody and place him in foster care. Amir and Bergina agreed to the voluntary safety plan. Amir left the family home and did not return for 481 days.

The complaint alleges that defendant Bellino's diagnosis of a traumatic cause of A.I.'s injuries was wrong and that defendant Bellino knew or should have known of another, more likely, non-traumatic cause; i.e., that A.I. had a Vitamin D deficiency, BEAC [1] and congenital rickets. The complaint alleges that defendant Bellino, instead of an inquisitive diagnosis methodology, employed a "burden shifting presumption that subdural hemorrhage is caused by abusive trauma." It is alleged that Dr. Bellino employed the presumption to justify a diagnosis of child abuse even though A.I. had symptoms that are medically known to be as symptomatic of Vitamin D deficiency, BEAC and congenital rickets as of shaken baby syndrome. It is alleged that his use of the presumption was pursuant to an arrangement or understanding with the county defendants that, where a child has a condition that might have been caused by abuse, an abuse diagnosis should be made so as to shift the burden to the parents to show another cause unrelated to abuse. It is alleged that defendant Bellino, acting in concert with the Montour County defendants, caused the initiation of the criminal process against Amir and caused the initiation of the voluntary safety plan, thereby wrongfully coercing Amir's involuntary exit from his home.

---

1. BEAC stands for Benign Extra Axial Collec-    tions of infancy.

The complaint asserts that Montour County has a policy of relying on doctors who are affiliated with the American Academy of Pediatrics (AAP) and who lack training concerning Pennsylvania law and due process. The AAP is stated to be the proponent of the presumption methodology used by Dr. Bellino and accepted by the other defendants. The complaint asserts that defendant Bellino was not reliable and that Montour County knew or should have known that he was not reliable. It asserts that Montour County's policies and its training of its child care employees is such that it deprives or may deprive the parents and child of due process. It asserts that Dr. Bellino was a state actor, that he misrepresented medical evidence, and that his representations were made with a deliberate indifference to the truth.

Counts I, II, III and IV are stated as substantive due process claims.

Count I claims that Dr. Bellino was recklessly indifferent to the truth and was grossly negligent in failing to ensure a complete diagnostic workup of A.I.'s condition to search for alternative causes prior to claiming to have diagnosed A.I. as a victim of shaken baby syndrome.

Count II claims that Dr. Bellino violated plaintiffs' substantive due process rights by following a policy of adopting the burden-shifting presumption that subdural hemorrhage was caused by abusive trauma during his investigation of whether the cause of A.I.'s impairment was, in fact, abuse.

Count III claims that Montour County violated the plaintiffs' substantive due process rights by appointing Dr. Bellino to the

Montour County Children and Youth Services' Multidisciplinary Team and by relying upon Dr. Bellino's presumption-tainted investigation without having trained Dr. Bellino in the due process principle that a presumption that shifts a burden of proof violates due process.

Count IV claims that the Montour County defendants violated the plaintiffs' substantive due process rights by failing to conduct an independent investigation in which no presumption were applied and in which the conclusion of Dr. Bellino were not accepted as correct and adequate.

In Count V, the plaintiffs claim that Montour County violated their procedural and substantive due process rights by extending voluntary placement agreements [2] beyond 30 days, by failing to give appropriate notice to parties to voluntary placement agreements of their due process rights, and by failing to train employees in due process considerations when employing voluntary safety plans.

Count VI claims that defendants Wade, Spencer, and Patterson violated the plaintiffs' procedural due process rights by extending the voluntary placement agreement beyond 30 days without obtaining a court order and without complying with the provisions of 55 Pa.Code § 3130.65(a).

Count VII claims that defendants Geisinger Medical Center, Bellino, and Wilson violated the plaintiffs' procedural and substantive due process rights by not conducting certain testing of A.I. to better ascertain Amir's culpability (or lack of culpability), by not presenting evidence, and by withholding potentially exculpatory evidence.

---

**2.** A voluntary placement agreement is a product of state law. 55 Pa.Code § 3130.65 A voluntary safety plan, which was used here, is not a product of state law. It is an issue here whether provisions of law for the use of a voluntary placement agreement are applica-

ble to the use of a voluntary safety plan. The plaintiffs are arguing that the 30–day limit under § 3130.65(b) upon the duration of a voluntary placement agreement without a court order applies, and that it is a provision that was not used in the present case.

Count VIII is a Pennsylvania law claim against defendants Bellino and Wilson of an intentional infliction of emotional distress.

The complaint contains a description of the grounds upon which the plaintiffs seek compensatory, punitive, and other damages.

## III. *The Pending Motions to Dismiss.*

Motions to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted were filed by the Montour County defendants (Doc. 16) and by the Geisinger defendants (Doc. 17) on April 2, 2012. Briefs in support, briefs in opposition, and reply briefs have been filed.

The Montour County defendants argue that the complaint fails to state a claim of a violation of a federally protected right because, assuming *arguendo* the use of a burden-shifting presumption of child abuse by Geisinger Medical Center and its employees pursuant to guidelines or policies of the American Academy of Pediatrics, there is no due process violation or other violation of a federally protected right. They argue, next, that the use of a voluntary safety plan is not inconsistent with any federally protected right. They also argue that the complaint does not contain adequately specific factual allegations and that defendants Patterson, Wade, and Spencer are entitled to absolute immunity or qualified immunity.

Defendant Bellino argues that under the facts alleged in the complaint he did not act under color of state law, that he did not violate any constitutional right of the plaintiffs, and that he has absolute immunity. The other Geisinger defendants argue that they did not act under color of state law, that they did not deprive the plaintiffs of any due process right, and that Count VII should be dismissed based upon *Younger*

abstention principles because the criminal prosecution of plaintiff Amir Isbell is ongoing.

The Geisinger defendants argue that a state law claim of an intentional infliction of emotional distress upon which relief can be granted is not stated and that there is not a substantive due process violation because the conduct of the defendants that is alleged is not extreme or outrageous.

## IV. *Motion to Dismiss Standard.*

A motion to dismiss a complaint for failure to state a claim upon which relief can be granted brought pursuant to Fed. R.Civ.P. 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint. In deciding a motion to dismiss the complaint, we must accept all well-pleaded factual allegations as true, "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *McTernan v. City of York,* 564 F.3d 636, 646 (3d Cir.2009)(quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). But more is required than labels, conclusions, and a formulaic recitation of the elements of a

cause of action. *Id.* "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir.2009). "A complaint has to "show" such an entitlement with its facts." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft, supra*, 129 S.Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft, supra*, 129 S.Ct. at 1949 (quoting *Twombly, supra*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* But "a complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, — U.S. ——, 131 S.Ct. 1289, 1296, 179 L.Ed.2d 233 (2011). Rule 8(a)(2) "requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Id.* The factual detail necessary to satisfy the standard will vary depending on the case. *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 320 n. 18 (3d Cir.2010).

## V. *Discussion.*

### A. *Color of state law—Dr. Bellino.*

There is a basis in the pleaded facts upon which a finding could be made that Dr. Bellino was acting in a capacity in which his conduct could reasonably be attributed to Montour County and in which he was in a symbiotic relationship with Montour County. Defendant Bellino emphasizes the absence of tangible benefit in either direction and an absence of any influence on his medical judgment by the County. But the plaintiffs plead that Dr. Bellino acted as a member of the County multidisciplinary team to which he was appointed by the County. In rendering an opinion that from his examination of A.I. he diagnosed abuse as the cause of A.I.'s injuries, Dr. Bellino was at least colorably acting as a part of the County's team of child abuse investigators providing investigative input into the County investigative—protective effort to determine whether and how to take state action affecting the rights and interests of the plaintiffs. The plaintiffs point to additional facts pleaded that Dr. Bellino was acting as a part of the County child abuse investigative and adjudicative team, including that he actively participated in the March 2011 dependency hearing.

The complaint does not fail to state a claim upon which relief can be granted as to Dr. Bellino insofar as the issue is whether it is sufficiently pleaded that he was acting under color of state law. The fact finder could infer that Dr. Bellino, acting in a team effort with County officials, knew of the consequences of the determination of "abuse" that he made and knew that the consequences would be effected by the team of which he was a part.

### B. *Absolute Immunity.*

█ State-employed social workers are entitled to absolute immunity for their actions in petitioning and in formulating and making recommendations to the court. *Ernst v. Child & Youth Services of Chester County*, 108 F.3d 486, 493 (3d Cir.1997). The claims here do not involve the defen-

dants' actions in petitioning and in formulating and in making recommendations to the court. The plaintiffs' claims involve events and incidents that occurred apart from and prior to petitioning the court and formulating and making recommendations to the court. Thus, absolute immunity is not applicable.

### C. Qualified Immunity.

#### 1. Qualified Immunity Standard.

Despite their participation in constitutionally impermissible conduct, government officials "may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity operates to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful. *Id.* "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow, supra*, 457 U.S. at 818–19, 102 S.Ct. 2727. A defendant has the burden to establish that he or she is entitled to qualified immunity. *Burns v. PA Dept. of Corrections*, 642 F.3d 163, 176 (3d Cir.2011). "[T]he defense of qualified immunity is available only for damages claims—not for claims requesting prospective injunctive relief." *Hill v. Kutztown*, 455 F.3d 225, 244 (3d Cir.2006).

The qualified immunity analysis generally has two steps. *Pearson, supra*, 555 U.S. at 232, 129 S.Ct. 808. Generally, the first inquiry in a qualified immunity analysis is whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. *Id.* "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir.2002). If, however, the plaintiff can establish a constitutional violation, the next step is to ask whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. "This is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir.2004).

██ In the qualified immunity analysis, it is often appropriate to consider whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right before considering whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Pearson, supra*, 555 U.S. at 236, 129 S.Ct. 808. But the court is permitted to exercise its discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case. *Id.*

#### 2. Due Process Standards.

Consistent with *Pearson, supra*, we will proceed with an analysis of the defendants' qualified immunity arguments by initially

deciding whether the plaintiffs have alleged a constitutional violation.

■ The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." A due process claim requires a two-part analysis. First, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn,* 213 F.3d 140, 143 (3d Cir.2000). Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

The elements of a substantive due process claim based on an infringement on familial rights were described by the court in *Billups* as follows:

> The Fourteenth Amendment guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, cl. 1. The Supreme Court has stated that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *see also Miller v. City of Phila.,* 174 F.3d 368, 374 (3d Cir.1999). This right, however, is not absolute. *Croft v. Westmoreland Cnty. Children & Youth Servs.,* 103 F.3d 1123, 1125 (3d Cir.1997). "Indeed, this liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children— particularly where the children need to be protected from their own parents." *Id.* In other words, "[t]he right to familial integrity ... does not include a right to remain free from child abuse investigations." *Id.*

To prevail on a substantive due process claim premised on the unwarranted infringement of familial rights, parents must demonstrate that the government action at issue was so egregious or ill conceived that it "shocks the conscience." *Miller,* 174 F.3d at 375; *see also Chainey v. Street,* 523 F.3d 200, 219 (3d Cir.2008). This "conscience-shocking" standard is not satisfied by demonstrating that the government action was merely negligent. *Id.* Rather, the governmental action must "exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Id.* at 375–76. In assessing this issue, the "fundamental liberty interests of the family unit" must be balanced against "the compelling interests of the state in protecting children from abuse." *Croft,* 103 F.3d at 1125. "[D]isruption or disintegration of family life" due to a child abuse investigation "does not, in and of itself, constitute a constitutional deprivation." *Id.* at 1125–26. In fact, a government actor may constitutionally override parents' rights to the care, custody, and control of their children if he or she possesses "some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Id.* at 1126. When a government actor possesses such evidence, his or her removal of a child from the parents' custody does not infringe on the parent's rights, even if evidence produced during the course of an investigation demonstrates that no abuse occurred. *Id.* To the contrary, a government actor infringes on the parents' rights by removing a child from their custody if he or she "consciously disregard[s] a great risk that there had been no abuse." *Ziccardi v. City of Phila.,*

288 F.3d 57, 66 (3d Cir.2002) (citing *Miller*, 174 F.3d at 375).

*Billups*, slip op., 2012 WL 1392294 at *8.

██ A procedural due process claim upon which relief may be granted is stated when there is a claim of a taking of life, liberty, or property in disregard of or in violation of procedural protections provided under law.

### 3. *Prior M.D.Pa. Rulings.*

There are two cases discussed extensively in the parties' briefs that were decided by judges of this district court: *Billups v. Penn State Milton S. Hershey Medical Center*, M.D.Pa. Civil No. 1:11–cv–01784, 2012 WL 1392294, and *Starkey v. York County*, M.D.Pa. Civil No. 1:11–cv–0981, 2011 WL 11071762. Both cases contain discussions of law applicable to the due process and *Monell* claims arising from situations where parents of a child thought to have been abused are given a choice between the initiation of formal dependency proceedings and a voluntary safety plan.

In *Billups*, abuse of a child was medically diagnosed. The child's father was charged with aggravated assault and endangering the welfare of children. The child was removed from her parents' custody and placed in temporary county Children, Youth, and Family (CYF) custody. It was later determined that the initial medical finding of abuse was incorrect and that, as in the present case, fractured ribs of the child were attributed to a Vitamin D deficiency and a fragility disorder. The order of dependency was terminated and legal custody of the child was returned to her mother. When the father was subsequently acquitted by a jury of criminal charges, the county proposed a voluntary safety plan, separating the father from the child. The parents of the child reluctantly accepted the plan.

The court in *Billups* dismissed the substantive due process claims of the parents, holding that reasonable and articulable evidence giving rise to a reasonable suspicion of child abuse on the part of medical personnel precludes a finding that those medical staff personnel, and county employees acting upon the medical diagnoses of those medical personnel, violated the substantive due process rights of parents and child. The court held that medical staff personnel who have employed the AAP medical presumption of abuse based upon intracranial injury (which is the presumption alleged to have been employed in this case as well) have not violated substantive due process rights of the parents or child on account of that. The court held that the county CYF employees' presentation, to the parents of a colorably abused child, of a voluntary safety plan as an alternative on a temporary basis to county action in the form of dependency proceedings or a voluntary placement plan was not so ill conceived or egregious that it could be found to shock the conscience. Again, the court based this holding upon a finding based on the face of the complaint that there was reasonable and articulable evidence giving rise to a reasonable suspicion that a child had been abused or was in imminent danger of abuse.

While there may have been some differences in the voluntary safety plan proposed and accepted in the *Billups* case from that proposed and accepted in this case, there is no material difference.

The court in *Billups* decided, however, that as to the county defendants the voluntary safety plan alternative to the legally established dependency and voluntary placement plan procedures could not on the face of the complaint be held to have been presented in a context and manner that would have satisfied procedural due

process because it was not established there by the defendants that the voluntary safety plan was grounded in legal authority and because no hearing was offered to the parents. The court accordingly denied the motion to dismiss as to the plaintiffs' procedural due process claim.

The court also addressed *Monell* policy and failure-to-train due process claims against the county. The court held that, although there was not a legally established duty on the part of the county not to extend a voluntary safety plan beyond thirty days without a court order, the county might have violated procedural parental due process rights if it presented the voluntary safety plan without appropriate process. The court denied the county's motion to dismiss as to the procedural due process issues on that basis. The court held that the complaint did not plead a pattern of constitutional violations by untrained employees or that employees had acted with deliberate indifference, and so dismissed the failure-to-train claims against the county.

The facts alleged here are not materially distinguishable from those in *Billups.*

In *Starkey,* a voluntary safety plan was presented to parents as an alternative to losing custody of their children after a child was brought to the hospital with small subdural hemorrhages. The parents, fearing loss of custody of their children, accepted the voluntary safety plan. They left their home according to that plan, leaving the children there with a grandparent.

In *Starkey,* unlike in *Billups* and in this case, no examining physician had diagnosed abuse, although the doctors had acknowledged to county officials the possibility of abuse. But the child's injuries in *Starkey* could also have been caused by the child bumping his head while playing as had been reported by the parents. In *Starkey,* a false report of shaken baby syndrome had been presented by the defendants in a report to the state court.

The court in *Starkey* denied the defendants' motion to dismiss the complaint, holding that the complaint did state a claim upon which relief could be granted of a due process violation in the county's presentation to the parents of the alternative of a voluntary safety plan as an alternative to losing custody of their children. The court also denied the motion as to the claim of a denial of the right to a hearing within 30 days and as to the *Monell* claim of a failure to train county CYF employees in procedural safeguards. The court did dismiss the claim of a substantive due process violation by the county in the alleged filing of unsupported child abuse reports.

### 4. *Substantive Due Process.*

### a. *The burden-shifting presumption of child abuse.*

The Montour County defendants argue that the complaint does not state a substantive due process cause of action upon which relief can be granted in Counts III and IV, based upon the alleged use of a burden-shifting presumption of child abuse by the Geisinger Medical Center and its employees pursuant to the alleged policy of the American Academy of Pediatrics since those claims do not implicate due process rights or the presumption of innocence. In *Croft v. Westmoreland County Children and Youth Services,* 103 F.3d 1123, 1125 (3d Cir.1997), the Court noted that the right to familial integrity does not include a right to remain free from child abuse investigations. The court there also stated that a state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused.

In this case, the plaintiffs challenge the state actors' investigative methodology in this particular category of cases where the evidence reasonably implies a shaken baby but may also imply another infant impairment that is not the product of abuse. The investigative methodology being challenged is that, upon finding shaken baby symptoms, the investigator without further diagnostic steps will take steps to protect the infant on the assumption that the symptoms were caused by abuse.

The alleged presumption that the plaintiffs challenge may be described as the *modus operandi* that when a baby exhibits a certain type and combination of injuries, the County child abuse investigator will assume shaken baby syndrome and will thereby in effect shift the burden to the baby's parent(s) or custodian to show another cause or explanation. Even though it is generally known that there are other often-occurring causes of a very similar range and combination of injuries, such as a Vitamin D deficiency, the *modus operandi* is to proceed as though shaken baby syndrome, or abuse, is the cause of the child's impairment, not necessarily ruling out the other possibilities but leaving it up to the parents to establish another cause.

The plaintiffs are unable to show in their brief (Doc. 24) that there is authority for determining a methodology that combines investigative and protective objectives in an arguably inappropriate manner to be a substantive due process violation, even though there may be evidence that a mistake was made. The plaintiffs cite a "controversy" (Doc. 24, p. 11), and assert a "deliberate indifference to the truth and the due process right of the Isbell family" (*Id.*). This methodology's application in certain cases may be heavy handed. But there is not a basis in law presented to find a violation of substantive due process. The complaint does not state a claim that the defendants did not act upon a reasonable suspicion.

Once the standard of a reasonable suspicion is met, there is not a legal basis for requiring further investigation before acting. The phenomenon of shaken baby symptoms overlapping with BEAC symptoms and congenital rickets symptoms caused by a Vitamin D deficiency may or may not be singular in the cases encountered by the state child abuse investigators. However, to impose a burden upon these investigators to exhaust all possible diagnostic measures before proceeding to measures to protect the child in the case of suspected shaken baby syndrome would be to impose that burden of exhaustive investigation in all shaken baby syndrome situations. To impose that burden could wreak serious damage to the child's safety interests and to the state's interest in protecting the child.

The protocol based upon the presumption has a sensible rationale. The state may act once there is a reasonable suspicion. The state actors here did not know of other evidence; their failing under the plaintiffs' theory was to have failed to take further investigative steps that could have ruled out other causes. The facts known, those that gave rise to the offer to the plaintiffs of the voluntary safety plan, gave rise to a reasonable suspicion.

### b. *Montour County defendants.*

The Montour County defendants here are, consistent with both *Billups* and *Starkey,* entitled to qualified immunity as to the substantive due process claims in Counts III, IV, V and VI, but not as to the procedural due process claims in Count V.

Although A.I. later came to appear to have a Vitamin D deficiency and congenital rickets that were accountable for fragile ribs and a swollen head, initially a medical diagnosis of abuse was communicated to

county officials. A medical doctor's diagnosis of shaken baby syndrome was a sufficient and reasonable basis for child welfare agents to take action to institute a voluntary placement agreement process. There were grounds for a voluntary placement agreement process. The initiation of that process would not have shocked the conscience. Nor did the initiation of a voluntary safety plan shock the conscience under those circumstances.

### c. Defendants Bellino, Geisinger and Wilson.

Defendant Bellino, acting in the capacity of a member of the multidisciplinary investigating team, would be entitled to the same immunity as a county official acting in that capacity. If his only alleged wrongdoing was to have erred in his medical diagnostic expert role, he can not be seen to have violated the plaintiffs' due process rights. *Ernst v. Child and Youth Services of Chester County,* 108 F.3d 486 (3d Cir.1997); *Miller v. City of Philadelphia,* 174 F.3d 368 (3d Cir.1999). Further, although he would potentially be found to have participated in a substantive due process violation if there were one, he as a doctor had no standing to provide procedural process.

The federal claims should be dismissed as Dr. Bellino.

Defendants and Geisinger Medical Center are entitled to dismissal upon the same grounds as is Dr. Bellino as to the federal claims. There is not an actionable substantive due process violation alleged in the complaint. The medical defendants were not able to cause procedural due process to be provided.

The conditions and requisites for a determination of qualified immunity are present here, and qualified immunity provides an independent and sufficient basis for 12(b)(6) dismissal as to defendants Bellino, Wilson, and Geisinger.

### 5. Procedural Due Process.

But (as in *Billups* ) there may have been a clearly established right to have employed the actual provisions of state law; i.e., a voluntary placement agreement and attendant processes. There may have been a procedural due process violation in using the less formal voluntary safety plan, even if that vehicle for temporary separation of child and putative abuser does not shock the conscience, if adequate opportunity to challenge and to be heard was not afforded.

Since the *Croft* decision of the Third Circuit provides that a coerced safety plan involving separation of parent(s) from child violates federally protected rights if it is presented to the parents without legal authority, the defendants have not shown, at this juncture at least, that they are entitled to qualified immunity as to the procedural due process claims.

While the Montour County defendants are entitled to qualified immunity as to substantive due process claims, they are not entitled to qualified immunity as to procedural due process claims.

The *Billups* case is, upon the facts, materially analogous to this case. The *Starkey* case is not.

The analysis of the court in the *Billups* case as to the substantive due process claim is also a sound analysis, and should be applied here to a materially similar claim. The plaintiffs' substantive due process claims should be dismissed as to all defendants.

The analysis of the court in the *Billups* case as to the procedural due process claim is also a sound analysis. The court there, in addressing the allegation of the complaint there that the voluntary safety plan option was presented without due process to the parents as a choice that

they could not refuse, applied the *Croft* decision and held that the complaint did state a claim upon which relief could be granted because it claimed that the defendants acted without legal authority. Counts V, VI and VII of the complaint, insofar as they contain procedural due process claims against the County defendants, should not be dismissed. Stated in other words, the complaint should not be dismissed as to defendants Montour County, Wade, Spencer, or Patterson as to the plaintiffs' procedural due process claims.

Montour County argues that a claim upon which relief can be granted is not stated against it because no County policy, practice, or custom resulting in a constitutional violation is alleged.

A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior. Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Instead, a municipality may only be liable for the torts of its employees in one of three ways: First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes." *McGreevy v. Stroup,* 413 F.3d 359, 367 (3d Cir.2005) (citations omitted).

"[T]here are two ways that a plaintiff can establish municipal liability under § 1983: policy or custom." *Watson v. Abington Twp.,* 478 F.3d 144, 155 (3d Cir. 2007). A plaintiff establishes that a policy existed by establishing that a decisionmaker possessing final authority to establish municipal policy with respect to the action issued an official proclamation, policy, or edict. *Id.* On the other hand, a plaintiff establishes that a custom existed by establishing that a given course of conduct, although not specifically endorsed or authorized by law, was so well-settled and permanent as virtually to constitute law. *Id.* at 155–56. "In other words, custom may be established by proving knowledge of, and acquiescence to, a practice." *Id.* at 156. The plaintiff has "the burden of showing that a government policymaker is responsible by action or acquiescence for the policy or custom." *Jiminez, supra,* 503 F.3d at 250. "[A]t a minimum, the government must act with deliberate indifference to the purported constitutional deprivation in order to ground liability." *Id.*

Under either route—policy or custom— " 'a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.' " *Id.* (quoting *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990)).

The plaintiffs' brief alleges that it is the policy of the County to rely upon opinions of physicians affiliated with the American Academy of Pediatrics to "explain" unexplained injuries. (Doc. 24, p. 1). The plaintiffs' brief alleges that it is the policy of the County to extend voluntary safety plans beyond 30 days without a court order. (Doc. 24, p. 2).

The plaintiffs do not make a cogent or persuasive argument that there is a way in which the first described "policy" is a policy upon which municipal liability could be predicated. But the use of voluntary safety plans may be a different matter. A voluntary placement agreement is subject to provisions of Pennsylvania law, including time limits and a hearing. But a voluntary safety plan is not shown to be a creature of or subject to provisions of

Pennsylvania law. The plaintiffs accepted the offer of the voluntary safety plan to avoid statutory child placement and custody procedures. The voluntary safety plan, as alleged in the complaint, is a coercive option and is an option that is apparently not subject to Pennsylvania statutory rules and guidelines. It is allegedly offered with no opportunity to the parents for a hearing or an opportunity to present information and opposition. According to the complaint, it may be used recurringly as a matter of county practice and policy.

There is a *Monell* claim stated of a policy, practice, or custom of the County upon which relief can be granted. The complaint alleges a due process claim upon which relief can be granted of a county policy of displacing state procedural law with a procedure that is not shown to be authorized by state law or to have procedural protections otherwise applicable under state law.

### 6. *State Law Claim of Intentional Infliction of Emotional Distress.*

Count VIII claims that the Geisinger defendants are liable to the plaintiffs under a Pennsylvania state law tort theory of an intentional infliction of emotional distress.

The Restatement (Second) of Torts § 46(1) defines the tort of intentional infliction of emotional distress as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." To be actionable as intentional infliction of emotional distress, the "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745, 754 (1998) (quoting *Buczek v. First Nat'l Bank of Mifflintown,* 366 Pa.Super. 551, 531 A.2d 1122, 1125 (1987)). "Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct." *Id.* (citing for example *Papieves v. Lawrence,* 437 Pa. 373, 263 A.2d 118 (1970) (defendant, after striking and killing the plaintiff's son with automobile and failing to notify authorities or seek medical assistance, buried body in a field where it was discovered two months later and returned to parents); *Banyas v. Lower Bucks Hosp.,* 293 Pa.Super. 122, 437 A.2d 1236 (1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to the plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3d Cir.1979) (defendant's team physician released to press information that the plaintiff was suffering from a fatal disease when physician knew such information was false)). Recovery for the tort of intentional infliction of emotional distress is reserved for "only the most clearly desperate and ultra extreme conduct." *Id.* at 754.

The complaint, Count VIII, does not allege intentional conduct. It does not allege reckless conduct. It does not allege conduct that is outrageous in character, extreme in degree, beyond the bounds of decency, atrocious, or intolerable in a civilized society. The complaint, construed in a light favorable to the plaintiffs, alleges competing medical opinions and competing diagnostic approaches among medical experts.

Count VIII should be dismissed as to all defendants.

### VI. *Recommendation.*

For the foregoing reasons, it is recommended that the defendants' motions

(Docs. 16 and 17) to dismiss the complaint be granted in part and denied in part. Counts I, II, VII and VIII should be dismissed as to all defendants; accordingly, the complaint should be dismissed as to defendants Geisinger, Bellino and Wilson.[3] Counts III, IV, V, and VI should be dismissed as to defendants Montour County, Patterson, Wade, and Spencer as to substantive due process claims and should not be dismissed as to these defendants as to procedural due process claims and *Monell* procedural due process claims.

Dated: July 6, 2012.

---

**3.** Although the issue need not be reached, we note that the argument of the Geisinger defendants based upon *Younger* does not have merit because the state criminal case does not provide an adequate opportunity for the plaintiffs to raise the federal claims raised in this civil action.